(No. 2668— )

CHARLES J. WEIDNER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 13, 1938.*

J. S. COOK, for claimant.

Otto Kerner, Attorney General; Glenn A. Trevor, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

Charles J. Weidner was an employee of the State Highway Department, and on February 2, 1935, while helping repair the highway on U. S. Route No. 6 near Morris, Illinois, he stepped from a truck to the tongue of a tar kettle wagon, slipped and fell about three feet, striking his back upon the pavement. On May 10, 1935 he filed his complaint herein, seeking an award of Four Thousand Eight Hundred ($4,800.00) Dollars and a pension for life as a result of the injuries which he alleged he had sustained.

The medical report of Dr. Gordon M. Perisho under date of April 19, 1935 discloses the nature of the injury to be cerebral contusion, contusion of the right elbow, compression fracture of the third lumbar vertebrae and a sacro-illiac sprain. After being taken to the hospital he was placed in a plaster body cast for six weeks and this was followed by a Taylor spine brace for seven weeks longer. He was in the hospital four days, then remained in his home for one week; was returned to the hospital for Laboratory tests and X-ray examinations.

The claim is before the court on the original complaint, a report by the Division of Highways, dated June 24, 1935 consisting of accident report, doctors' reports and correspondence, a supplemental highway report of July 21, 1936 accompanied by a medical report by Dr. Thomas, Orthopedic Surgeon of Chicago, also the transcript of testimony of the sev-

eral witnesses and the Statements, Briefs and Arguments of the respective parties.

The record establishes that claimant was an employee of respondent and that both the latter and the claimant were operating under the terms of the Workmen's Compensation Act of Illinois at the time of said accident. Further, that the accident in question arose out of and in the course of claimant's employment. The application for compensation was filed herein within four months after the accident occurred, and the claim is properly before the court for consideration. The report of the Division of Highways shows that claimant commenced work for respondent December 1, 1934 and worked sixteen days in December, sixteen days in January, 1935, and two days in February, being paid at the rate of Forty (40) Cents per hour for an eight hour day. He was a maintenance helper. Such employment is not continuous throughout the year but is governed by that provision of statute which provides for a minimum number of working days of two hundred (200) in determining average annual wages.

Claimant contends that because he occasionally drove the truck from which he stepped at the time of his accident, his compensation should be determined under a Union scale for truck drivers at from Seventy-five (75) Cents to One ($1.00) Dollar per hour. The record discloses no merit to this contention. He was hired as a maintenance helper and drew wages as a maintenance helper. His wages amounted to Three and 20/100 ($3.20) Dollars per day. His annual wages were Six Hundred Forty ($640.00) Dollars or an average of Twelve and 31/100 ($12.31) Dollars per week. Under the provision of Section 8 (J) 2 of the Workmen's Compensation Act the amount of any temporary total disability allowable to claimant would be increased from the minimum of Seven and 50/100 ($7.50) Dollars to a minimum of Twelve ($12.00) Dollars per week by reason of there being two children under the age of sixteen (16) years dependent upon him at the time of such accident.

There is some conflict as to when the claimant was able to go back to work and as to when his temporary total disability ceased. Dr. John Mitchell, under whose care claimant was for the greater portion of the treatments received by him, testified that in his opinion claimant was able to work from approximately September 1, 1935. On Page D-1 of the

record claimant testified that the first work he did was on November 1, 1936, when he worked for one month for O'Brien and Morris, Contractors at Four ($4.00) Dollars per day. Later in his testimony (Page D-4) he stated that he had done no work prior to June 5, 1936 except driving his truck a few times for short distances.

Dr. Mitchell, an Orthopedic Surgeon, of Joliet, Illinois, testified that he first saw claimant on May 25, 1935. At that time he was complaining of a pain in the lower side and between his shoulders. There was some pain and pressure between the third and seventh Dorsal vertebrae but no pain to pressure in the Lumbar region. The X-rays that were taken of him showed Hypertrophic Arthritis. There was a limitation of motion in the forward bending which the doctor thought was due to a stiffness in his spine from non-use. The doctor was unable to state whether there had been a fracture or merely a spur from such arthritis; that there was no way to distinguish between the two because of the time that had elapsed between the time of the injury and the examination. Such arthritis, the doctor testified, is that type which produces an overgrowth of bone and not a destruction of bone. After massage treatments the patient had greater motion in the spine but there still remains some stiffness in the lumbar region; that he finished his treatment with the patient on July 30th, 1935, and believed he should have been able to go back to work within a month after that time. The doctor had no record of any injuries to claimant's right elbow, and the major portion of the complaint was as to pain between patient's shoulders. There was no complaint to Dr. Mitchell in regard to the sacro-illiac sections. The doctor further testified that the patient had no apparent pain when he left and complained only of stiffness in his back. From his treatment and examination the doctor testified that in his opinion the arthritis existed prior to the injury.

Claimant had previously been injured while working on the W.P.A. in 1934, at which time he had mashed his left foot and was laid up for about six months as a result thereof. He testified that he now has pains in the left hip, the lower part of the spine and in the left shoulder; that this pain comes and goes, usually occurring when he attempts to lift anything heavy, and lasts for as much as an hour at a time. Dr. N. H. Adams made an examination of claimant on January 22, 1936

and again on June 5, 1936. From the latter examination he testified that claimant could then bend over and touch his finger tips nearly to the floor. That patient is subject to pain in the left hip and that these pains would be due to the arthritic changes in the patient's spine; that in his opinion the patient could do light work in house or factories and that there is a causal connection between the patient's present condition and the accidental injury.

Dr. H. B. Thomas, Orthopedic Surgeon of Chicago, examined patient on June 5, 1936. He testified that they stripped the patient and X-rayed the body. "Patient complained of the coccygeal region in the spine but my examination of same disclosed negligible evidence of disability. The X-ray of the sacro-illiac region showed Hypertrophic Arthritis but no evidence of injury. A negative condition was found in the Lumbar region. We found a compression fracture of the third vertebrae which plaintiff did not know he had. The arthritis found in the sacro-illiac joint was of a toxic formation known as traumatic." From his examination the doctor testified that in his opinion claimant was able to do the same type of work today that he was doing at the time of the injury. In the opinion of Dr. Thomas the pain complained of by claimant was not from the portion of the body affected by his fall but from other portions of the body as a result of the arthritic condition present. Because of the evidence of the fracture which claimant has sustained in the back however, the doctor testified that there was in his opinion a ten (10) per cent permanent disability existing, that could be attributable to the accident in question.

From a consideration of the entire record we must conclude that the end of claimant's total temporary disability was November 1, 1936 when he began working for the Contractors O'Brien and Morris, at wages in excess of those which he had been earning in the employ of respondent. In a report, dated May 27, 1935, Dr. Mitchell stated that in his opinion from an examination of the patient the latter should be able to return to work after removal of the brace which he was then wearing and some massaging of his spine to induce normal motion. Following this, on June 3, 1935, Dr. Perisho made his report, stating that in his opinion the patient was apparently "suffering from traumatic arthritis which has been definitely aggravated by the injury." The

doctor further reported that he had done everything he could for the patient," * * * he is still unable to return to work and further treatment by an Orthopedic Specialist was advised. Further treatment was authorized by the Examining Committee of the Health Department of the State of Illinois and Weidner was informed on June 8, 1935 that he might receive further treatment from Dr. Mitchell. In his testimony (Page C-3) the latter testified that he gave him massage treatments until July 30, 1935 thereby obtaining more motion in the patient's spine. The doctor further testified that in his opinion the patient was able to return to work approximately September 1, 1935. In his final testimony on August 7, 1937, Dr. Mitchell, who apparently had more care of the patient than any other doctor, was examined as follows:

"Q. State whether or not in your opinion the pains of which Mr. Weidner complains are a result of the injury incurred by him.

"A. I don't know. I can't answer that. His pains are subjective and I have to go by objective findings.

"Q. Do you find objective symptoms to substantiate the pains of which Mr. Weidner complains,

"A. I did at that time as he had stiffness in his back and pain upon pressure in the upper dorsal region

"Q. The pain in the upper dorsal region was not, however, at the site of the injury?

"A. No."

The burden of proof is upon claimant to establish his right to permanent partial disability, and this he has failed to do. He has arthritis but apparently not from the injury suffered by him. His earning capacity is apparently as great now as before the accident, and no basis is shown upon which to estimate an award for partial permanent disability.

From a consideration of all the evidence the court finds that claimant is entitled to temporary total disability for a period of Ninety-one (91) weeks at the rate of Twelve ($12.00) Dollars per week, or a total of Ten Hundred Ninety-two ($1,092.00). Dollars. That he has heretofore received One Hundred Forty and 40/100 ($140.40) Dollars compensation which leaves a balance of Nine Hundred Fifty-one and 60/100 ($951.60) Dollars due him for temporary total compensation to November 1, 1936.

All of the bills shown by the departmental report filed May 27, 1938 to be still outstanding, for medical and hospital charges, were incurred with the approval of the respondent and are entitled to payment as follows:

Dr. Gordon M. Perisho.................................... $148.00
Morris, Ill. Hospital........................................ 85.50
Dr. John Mitchell, examination............................ 15.00

$248.50

It is therefore ordered that an award be and the same is hereby allowed for the payment of said bills in the sum of Two Hundred Forty-eight and 50/100 ($248.50) Dollars in favor of claimant for the use of the following, to-wit:

Dr. Gordon M. Perisho.................................... $148.00
Morris, Ill. Hospital........................................ 85.50
Dr. John Mitchell, examination............................ 15.00

$248.50

It is further ordered that an award is hereby allowed claimant for an additional sum of Nine Hundred Fifty-one and 60/100 ($951.60) Dollars for temporary total disability sustained by him in the accident in question, such award being payable in weekly installments of Twelve ($12.00) Dollars per week. As the total amount so due has already accrued, the full sum of Nine Hundred Fifty-one and 60/100 ($951.60) Dollars is payable at the present time.

This award being subject to the provisions of an Act entitled, ''An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method of Payment Thereof,'' Approved July 3, 1937 (Sess. Laws 1937 p. 83), and being, by the terms of such Act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from said appropriation from the Road Fund in the manner provided for in such Act.